IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSSELL B. NELSON,

        Plaintiff,

    v.

OCWEN LOAN SERVICING, LLC,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
and TRANS UNION, LLC

        Defendants.

No. 3:14-cv-00419-HZ

OPINION & ORDER

Lawrence B. Hunt
Kevin J. Tillson
Hunt & Associates, PC
101 SW Main Street, Suite 805
Portland, OR 97204

    Attorneys for Plaintiff

Nicholas J. Henderson
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 200
Portland, OR 97204

William M. Huse
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077

    Attorneys for Defendant Trans Union, LLC

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Russell Nelson brings this action against Ocwen Lending Services, LLC ("Ocwen"), and the three major consumer credit reporting agencies ("CRA"), Equifax, Experian, and Trans Union, for violations of the Fair Credit Reporting Act ("FCRA"). Defendant Trans Union moves to dismiss for failure to state a claim upon which relief can be granted. (#10). The motion is denied.

BACKGROUND

Nelson's claims against Ocwen and the three CRAs arose out of a 2008 loan Nelson secured for a duplex in Portland, Oregon. Complaint ("Compl.") ¶¶ 4-10. Nelson sold the property on April 8, 2013 and remitted to the note holder, Ocwen, the full payoff amount of $217,491.76. Compl. ¶ 15. Ocwen claimed, however, that Nelson owed a prepayment penalty of $5,134.96, despite an addendum to the note explicitly waiving such a penalty if Nelson provided notice and documentation to the holder that he was paying the amount in full after selling the property to an unrelated third party. Compl. ¶¶ 16-17; Plaintiff's Exhibit ("Pl. Ex.") 2. Nelson insisted that prior to closing, he sent Ocwen the proper notice of the sale and documentation that the purchaser was an unrelated third party. Compl. ¶ 13.

Nelson and Ocwen battled for months about the penalty. Compl. ¶¶ 16-26, 36. In April and again in September of 2013, the escrow officer responsible for the closing wrote to Ocwen explaining that the sale fully satisfied the loan and complied with Ocwen's instructions for waiving the prepayment penalty. Compl. ¶¶ 19, 24; Pl. Ex. 6, 11. Still, Ocwen insisted Nelson owed a penalty, and sometime before October, 2013, Ocwen reported the outstanding prepayment penalty as an adverse item to the three major CRAs. Compl. ¶ 27. Later in October, Nelson received written notices from several personal credit card companies that his credit lines

2 - OPINION & ORDER

were being reduced because of Ocwen's negative credit report. Id. On or about November 6, 2013, Multnomah County recorded a Deed of Reconveyance acknowledging Nelson had paid the entire amount due on the promissory note and releasing Ocwen's Trust Deed on the property. Compl. ¶ 36.

Nelson filed disputes about the Ocwen debt with the CRAs on December 16, 2013. Compl. ¶¶ 28-32. Nelson claims the CRAs failed to conduct an adequate investigation into the dispute, failed to review the loan documents and other information he submitted, and failed to delete the adverse item after the CRAs could not verify its accuracy. Compl. ¶¶ 45-59. Nelson then filed this suit and accused the CRAs of violating Sections 1681e(b) and 1681i of FCRA, which require CRAs follow reasonable procedures to assure maximum accuracy of consumer credit reports, and conduct a reasonable reinvestigation into disputed debts. 15 U.S.C §§ 1681e(b) and 1681i (2014); Compl. ¶¶ 45-59. Nelson also brought FCRA claims against Ocwen as a furnisher of credit information for failing to conduct a reasonable investigation after receiving notice of his dispute from the CRAs. 15 U.S.C. § 1681s-2(b); Compl. ¶¶ 37-41.

Defendant Trans Union now moves to dismiss Nelson's complaint for failure to state a claim because, it argues, a CRA is not required under FCRA to address the merits of a purely legal dispute between a creditor and consumer. Defendant's Motion ("Def. Mtn.") at 3.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) asks the court to test the sufficiency of the plaintiff's claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). The court is not, however, required to assume the truth of mere conclusory

3 - OPINION & ORDER

allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). A complaint that alleges grounds for relief based on nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint must state well-pleaded facts that "permit the court to infer more than a mere possibility of misconduct . . . ." Id. at 679. See also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative legal . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)") (citations omitted).

DISCUSSION

Nelson alleges Trans Union negligently and recklessly failed to comply with its duties under FCRA by (1) failing to follow reasonable procedures to assure maximum possible accuracy of the information on his credit report, and (2) failing to comply with FCRA's reinvestigation provision. 15 U.S.C. §§ 1681e(b), 1681$i$ (2014); Compl. at ¶¶ 55-57. Both claims require a prima facie showing that the consumer's credit report contained inaccurate information. Bradshaw v. BAC Home Loans Servicing LP, 816 F.Supp.2d 1066, 1071, 1073 (D. Or. 2011) (citations omitted). An item on a credit report is considered inaccurate under FCRA if it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be

4 - OPINION & ORDER

expected to adversely affect credit decisions." Gorman v. Walpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th. Cir. 2009).

Trans Union insists that Nelson's claims against it are fatally deficient because he does not allege a factual inaccuracy on his credit report that could have been cured by a reasonable investigation. Def. Mtn. at 3. Trans Union asserts the prepayment penalty dispute was a purely legal question, the answer to which required an interpretation of the promissory note, the Prepayment Penalty Addendum, and Nelson's notice to Ocwen of his intent to sell the property. Def. Mtn. at 3. Trans Union relies almost exclusively on Carvalho v. Equifax, et al., 629 F.3d 876 (9th Cir. 2010) to argue that a CRA cannot and is not required under FCRA to resolve such a dispute, because Nelson's claim is "nothing more than a collateral attack on a particular item on his . . . credit report." Def. Mtn. at 5 (citing Carvalho, 629 F.3d at 892).

The plaintiff in Carvalho incurred $118 in expenses for treatment at Bayside Medical Group ("Bayside") in California. Bayside attempted unsuccessfully to collect the debt, and assigned it to a collection service. The service also tried and failed to collect, and in due course reported the outstanding amount to the three major CRAs. Carvalho, 629 F.3d at 881–82. After the item appeared on her credit report, she disputed the amount with the CRAs because, she claimed, her health insurance carrier should have paid it. The CRAs initiated a standard automated procedure that verified the amount with the collection agency as accurate and told Ms. Carvalho that any disagreement over the terms of coverage "should be resolved between [her] and her insurance company." Id. at 882.

She filed suit alleging, in part, that the CRAs failed to conduct a proper reinvestigation of her dispute in violation of the California Consumer Credit Reporting Act ("CCCRA").[1] The

---

[1] The Ninth Circuit found that the CCCRA was "substantially based on the federal [FCRA]," and analyzed the claims under FCRA because "judicial interpretation of the federal provisions is

5 - OPINION & ORDER


plaintiff conceded that the reported amount due to Bayside was accurate, but she insisted her insurance was obligated to pay it. The Ninth Circuit affirmed the District Court's grant of summary judgment in favor of the CRAs because there was no dispute that her credit report was factually accurate. Id. at 889, 892 (citations omitted). "Although the FCRA's reinvestigation provision . . . does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including [the Ninth Circuit], have imposed such a requirement." Id. at 890 (citation omitted). Without a factual inaccuracy, the plaintiff essentially argued the CRAs should be responsible under FCRA for investigating her legal defenses to payment. The court refused to impose such a duty. "Credit reporting agencies are not tribunals," the court stated. "They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." Id. at 891. The proper recourse for a consumer in the plaintiff's situation, the court explained, is to resolve the issue in a suit against the creditor. Id.

      The key difference in the present case is that Nelson, unlike Ms. Carvalho, contests the validity of the debt. Ms. Carvalho admitted the services rendered, the amount owed, and the relevant dates were correct; she argued unsuccessfully that her report was latently misleading because she was not legally obligated to pay the bill. Nelson argues that his report was factually inaccurate and patently misleading because he never owed the amount shown. Accordingly, his case is more analogous to cases such as Bradshaw, 816 F.Supp.2d at 1072, where the court found the plaintiffs established prima facie inaccuracy by disputing the amount owed and whether the account was actually past due. See also Saenz, 621 F.Supp.2d at 1080 (plaintiff demonstrated

---

persuasive authority and entitled to substantial weight when interpreting the California provisions." Id. at 889 (citing Olson v. Six Rivers Nat'l Bank, 111 Cal.App.4th 1 (2003) (quotation marks omitted).

6 - OPINION & ORDER

prima facie inaccuracy with evidence Trans Union continued to list as outstanding a collection balance previously satisfied with a compromise payment).

The plaintiffs in Bradshaw thought they had finalized a modification of their mortgage to a lower monthly payment with Countrywide Bank, and made three on-time payments of the new amount. At some point, Bank of America bought the loan from Countrywide, rejected the (apparently) still-pending modification, and reported the unpaid amounts to the CRAs as past due. The plaintiffs unsuccessfully disputed the late items and sued after they were subsequently denied credit. Bradshaw, 816 F.Supp.2d at 1069–70. Trans Union and Experian moved for summary judgment, citing heavily to Carvalho in support of the proposition that the dispute over the modification's validity was a legal issue they were not obligated to resolve. Judge Haggerty agreed with that basic premise, but refused to find the credit report at issue accurate as a matter of law. Id. at 1071. Unlike Carvalho, the plaintiffs raised several factual disputes about the mortgage account—that they in fact made payments on time, and that the reported monthly payment and amount past due were too high. The accuracy of the credit report was, therefore, a fact question for the jury. Id. at 1070-71.

Nelson asserts that, like Bradshaw, his credit report was patently inaccurate and the discrepancy could have been discovered and cured by Trans Union through a cursory review of the documents he provided regarding original loan, the prepayment penalty, and the sale of the property to an unrelated third party. See 15 U.S.C. 1681(a)(2)(B) (requiring a CRA conducting a reinvestigation into a dispute to "review and consider all relevant information submitted by the consumer"). Trans Union steadfastly resists any suggestion it had a duty to explore the validity of Nelson's claims that the Ocwen debt was erroneous because it was a legal dispute that CRAs are "neither qualified nor obligated to resolve under the FCRA." Def. Response at 4 (quoting

7 - OPINION & ORDER

Carvalho, 629 F.3d at 891). Trans Union's argument is compelling in its simplicity, but it does not explain why Trans Union failed to locate the public deed of reconveyance, recorded more than thirty days before Nelson lodged his dispute with Trans Union in December, that released Ocwen's security interest. Those facts construed in Nelson's favor are sufficient to establish the prima facie claim that Trans Union prepared a report containing inaccurate information. Saenz v. Trans Union, LLC, 621 F.Supp.2d 1074, 1081 (D. Or. 2007).

Furthermore, it would be inconsistent with Congressional intent to allow a CRA to hide behind Carvalho any time it is faced with a dispute involving a legally significant document. See 15 U.S.C. 1681(a)(4) ("The Congress makes the following findings: . . . Consumer reporting agencies have assumed a **vital role** in assembling and evaluating consumer credit . . . . There is a need to insure that consumer reporting agencies exercise their **grave responsibilities** with fairness, impartiality, and a respect for the consumer's right to privacy.") (emphasis added). See also Saenz, at 1083 (finding it unreasonable for a CRA to simply verify the creditor's position after receiving notice from the consumer that the creditor's information may be suspect).

Moreover, the Ninth Circuit has endorsed holding a CRA liable under FRCA when it "overlooks or misinterprets" unambiguous and publicly available documents of legal significance. See Dennis v. BEH-1, LLC, 520 F.3d 1066, 1068–70 (9th Cir. 2008). The plaintiff in Dennis sued Experian for wrongly reporting a nearly $2,000 civil judgment against him. The plaintiff called Experian, and explained he had settled the dispute and that no judgment was entered. Experian hired a third party public records investigator, Hogan Information Services ("Hogan") to verify the disputed information. Hogan found Dennis's court file and reported that it confirmed Experian's report of a civil judgment against him. Id. at 1069. But the file quite clearly contained a "Request for Dismissal" and the court clerk's corresponding entry read:

8 - OPINION & ORDER

"01/28/2003 Dismissal Without Prejudice—Entire Action, Filed & Entered." Id. at 1068 The Ninth Circuit further explained the "Request for Dismissal":

> The document is a written stipulation between Dennis and his landlord that no judgment would be entered against Dennis so long as Dennis complied with the payment schedule. The parties couldn't have been clearer on this point: "If paid, case dismissed. If not paid, judgment to enter upon [landlord's] declaration of non-payment...." The parties altered the pre-printed form accordingly. They crossed out part of the document's title ("STIPULATION ~~FOR JUDGMENT~~"); wrote "NO JUDGMENT SO LONG AS PAYMENTS MADE" over "Judgment shall be entered in favor of plaintiff"; and struck the final line, "~~Judgment is hereby ordered~~," replacing it with "Stipulation Approved." Experian incorrectly interpreted this document as an entry of judgment against Dennis.

Id. at 1070. Although the stipulation might have be "unusual," the Dennis court reasoned, it was also "unambiguous, and Experian was negligent in mis-interpreting it as an entry of judgment." Id. The court went further and explained "how important it is for Experian, a company that traffics in the reputation of ordinary people, to train its employees to understand the legal significance of the documents they rely on." Id. at 1071.[2]

Similarly here, the documents Nelson provided when he disputed the Ocwen debt were unambiguous and easy to understand. Trans Union insists the complexity of the issues Nelson raised excuses its failure to reinvestigate because resolving the dispute would have required Trans Union to interpret the Promissory Note and the Prepayment Penalty. Construing the allegations in the Complaint in Mr. Nelson's favor, as is required here, the Court disagrees with Trans Union's characterization of the dispute. The sale of the property was an entirely unremarkable transaction governed by standard forms and boilerplate terms requiring little, if any, legal analysis to understand. See Pl. Exs. 1-3. The stipulated dismissal in Dennis is no more

---

[2] The court found Experian liable for both Hogan's negligence in misinterpreting the legal significance of the entry and Experian's apparent failure to even look at the file Hogan found. Dennis, 520 F.3d at 1070.

9 - OPINION & ORDER

complex or difficult to navigate than the boilerplate terms of the Prepayment Penalty Addendum in the present case. See Dennis, 520 F.3d at 1070. And again, Trans Union's argument does not explain why, after being alerted to the potential problem with the Ocwen debt in December, its reinvestigation did not uncover the deed of reconveyance recorded in November that showed Nelson had fully satisfied the account and Ocwen no longer held a trust deed on the property.

## CONCLUSION

Based on the foregoing, Defendant Trans Union's Motion to Dismiss is denied.

IT IS SO ORDERED.

Dated this 23 day of June, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge